and we'll go ahead and begin with 19-1153 Aubrey v. Koppes. Ms. Robinson. Good morning your honors, counsel, staff, and observers. My name is Jennifer Robinson and I'm here this morning on behalf of the appellant, Kim Aubrey. Unless there are specific questions from the court on other issues, my plan this morning is to address the district court's grant of summary judgment on Ms. Aubrey's failure to accommodate claim and on her disability discrimination claim. The district court granted summary judgment on the failure to accommodate claim after concluding that Ms. Aubrey could not establish a prima facie case because she had not requested a plausibly reasonable accommodation. Summary judgment was granted on the disability discrimination claim after the district court concluded that Ms. Aubrey had not established a prima facie case because she could not show that she was qualified for her position with a reasonable accommodation. Thus both claims turn on the existence of a reasonable accommodation. Before getting into the heart of the argument, I'd like to start with a quote out of the Fifth Circuit in Couture v. Board of Supervisors and it's this, an employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended. That's exactly what Well County did in this case. A brief factual background, in January 2015, Ms. Aubrey was diagnosed with a serious medical condition and requested leave through the end of July 2015. Well County approved that leave with no specific end date. From the end of February 2015 through April 14th 2015, Ms. Aubrey began receiving therapy and on April 14th 2015, her therapist indicated that she had demonstrated remarkable gains in all areas and Let me ask you a question about the leave. So she asked for family medical leave act leave originally, right? That is correct. And that lasts for four months? I believe that family medical leave act ended in February of 2015. Okay, so it was roughly four months? Yes, your honor. Okay, and then so she didn't ask for additional leave in April. It was just sort of the county allowing her to continue without any additional request for leave. Is that right? Yes, your honor. What Ms. Coppins testified to the supervisor was that she granted leave with no specific end date. So there was no need for her to request more leave because it had already been granted with no specific end date. I thought that I thought that that may have been true at one point, but I thought that that at the meeting that they called, she said that she had a another meeting with the psychiatrist, with the psychologist or with neurologist and that she needed time to proceed to that. Was that right or wrong? That is correct, your honor. So wouldn't that have been a request for an accommodation for that period of time or not? Yes, when we got to the hearing, April 15th, when we got to that hearing, she did specifically say, I need to go to this other doctor's appointment. Well, let me back up a little bit before what happened at that meeting. So as I said, on April 14th, the meeting was on April 16th. So April 14th, she'd gone to her therapist, got a recommendation, she was doing well. She had previously scheduled a meeting with her neurologist because she found that she could go back to work earlier than July 15th, the original date. So on April 15th, that's when the county basically called her in to say, tomorrow we're having this pre-termination hearing. But she had already scheduled a an appointment with her doctor for May 22nd, 2015 and that appointment was specifically to get an earlier return to work date, earlier than July. And she explained that to the employer? She did explain that. Did she say, I would like to have at least enough time to go through that doctor's appointment? Exactly, your honor. That's exactly what she said. Where does that other date, the other, was it April 15th, whatever date that you mentioned, where does that come from? May 22nd, 2015. No, no, excuse me, a different date, July 31. Did she ever have a July 31? Yes, July 31, when she originally became ill in January, December, January time frame. She had requested leave, an extended leave, from that time until July 31st of 2015. She made an explicit request to July 31st? Yes, your honor. She had an explicit request until July 31st, 2015 for her leave. So from that point, that's when the supervisor approved the leave, but said she didn't give a specific end date for the leave. So Ms. Aubrey had no reason to go to get any return to work certification until the pre-termination hearing on April 16th, 2015. So on April 2015, Well County notified Ms. Aubrey that she could come into work the very next day, and it was at that hearing Ms. Aubrey was asked for the very first time if she could return to work in a couple weeks to do her full job. Now that request should have began the interactive process, not ended it. Ms. Aubrey responded in that meeting that she had an appointment for May 22nd, 2015, and she asked for continued leave so that she could get her doctor's approval for the return to work date, an earlier return to work date. Well, if they'd have said, Ms. Aubrey, on the April 15th meeting, Ms. Aubrey, tell us what you need to, what kind of accommodation you need to return to work, what was her answer to that? Her answer was, I have an appointment on May 22nd, 2015, to get my doctor's approval. So when you're on continuous leave, it's required that you get a doctor's approval, a certification, in order to come back to work. So her response would have been, if they'd asked specifically those questions, yes, I have a doctor's appointment, I'm following the company's procedure, 15 days are usually allowed, more can be allowed if requested. But that was the very beginning of the interactive process. Are you saying that it was the employer's responsibility to ask her whether or not she needed more time, rather than it being your responsibility to show, and show reasonable accommodation? No, Your Honor, that's not what I'm saying at all. What I'm saying is, at the point when the employee is on continuous leave, she has no idea, until the employer says, can you come back in two weeks in order to do your full job? That's when it was their, they asked if she could come back, and it's her obligation to begin that interactive process as well. She doesn't have the ability to say, well, here are my restrictions, after one day notice. Her only response can be, I have an appointment May 22nd, 2015, to see my doctor to get a return to work certification. I mean, as of the date that this meeting occurred, and during the meeting, I mean, she essentially informed her employer that she had a lot of limitations that were going to make it hard for her to do the job. Is that a fair statement? She said that she had, she said she'd been improving, her sight was improving. She did ask for some accommodations, but yes, people that are disabled, she wasn't 100%. I'm not 100%, so she did ask, she did say that she wanted to go back to her doctor to get medical certification to return. Okay, and when she went back to her doctor, did she get a certification to return in May? So on May 22nd, 2015, she did go to her doctor, and her doctor provided a note, it is in the record, I think it's at 322, but in any case, the note basically said that she, that her PREZ, the condition she had, had resolved. So she did get documentation showing that the condition had resolved as long as her blood pressure remained under control. So now at this point, remember, May 22nd, 2015, she's already been fired now. So there's nothing that she can give to the doctor to ask what restrictions are needed, because when you determine whether restrictions are needed, what you're looking at is a specific job with a job description and showing what the duties and responsibilities are. So the only thing that he could give her was the certification saying that your condition had resolved, and thereafter, she did go to the doctor again on June 4th of 2015, and he did say that she could return to work immediately. She had had an MRI in between that time frame. So she knew that, or the doctor did indicate on May 22nd, 2015, and on June 4th, 2015, after that MRI, that she could return to work. And again, no restrictions were imposed at that time, because there was no job description. She'd already been fired. There was no, nothing for her to bring to the doctor. Fired. Is there a nuance going on here, though? Because, I mean, she has one physician that says, you can go to work, no restrictions. But then when she was offered another position with the county, after she took her note back to them and said, hey, I've been released, they said, well, we'll offer you this other position. And then the word was that there was another doctor that wouldn't release her to do that job. Well, well, it kind of, sort of, Your Honor. That question's very important, so you need to get right to the direct answer to that. Okay. So let me make sure I understand it right. So on June 4th of 2015, she did get this certification saying that she could return to work, but it didn't say. From one doctor. From one doctor. This was the same doctors, though, Your Honor. Okay. But that certification did not say that she could return to work with no restrictions. And it couldn't have said that at this point, because there is no job description for her to, for the doctor to look at to evaluate whether she could return to work with restrictions or not. So the only thing the doctor could say is, you can return to work. And then that's part of the interactive process, where now the employer should be saying, well, we have this job or we have that job. Then she has to go back to the doctor to have him look at those specific job requirements. And if you recall, as of June 4th, 2019, the very job that she was out of was still open and available. They had temporarily allowed a Ms. Wall to fill that position to keep it open for her while she was out. Did she reapply for that position? She didn't know that it was open. It doesn't matter whether, did she reapply? She did not reapply for any position. Part of that interactive process continues on after the, even after the employer had been terminated. Let me ask you, is she required to reapply for the position? She is not required to reapply for the position. And what's your best legal authority for that? I believe it's Smith versus Midland Brake. What about Crucis or Cruz, that case where it says that, you know, we said that she needs to reapply? Well, from the way I looked at those cases, Your Honor, I think that the 10th Circuit stated conclusively that she did not need to reapply. And which case, you're saying that Smith versus Midland? Right. Does that, that she does not have to reapply once she's been discharged? It depends upon the timing of everything. Are you saying that Smith versus Midland says that she does not have to reapply? I do, I am saying that, Your Honor. And I think... And what about this other case, Cruz, I mean, it was just mentioned to you, I'm not familiar with it, but Cruz or... Cruz or Crucis, I'm not quite sure. Crucis, I don't honestly remember exactly what that case held. I was relying on Smith, and I don't believe that was cited by Judge Moore, the Cruz case. But in any event, looking at whether or not she had to reapply for the position, we looked primarily at the timing that the employer has to identify a position when she has been terminated. Let me ask, are you familiar at all with Brown versus the Board of Regents of Oklahoma Agricultural School? Are you familiar with that Tenth Circuit case? I might be familiar with the facts, but the name doesn't immediately... That's another case, although it's an order in judgment that says that she must reapply for that, to apply to her. Well, we are looking at two different time points, Your Honor. The claims in this case are related to her termination on June, I'm sorry, May 20th of 2015. So that would be another claim. But the discussion that I was having today was related to the termination. So that would be another issue that we would look at. Let's talk about timing a minute. Her complaint was that she was improperly terminated on April 16, right? Actually, it was April 20th. Yeah, but the meeting was the 16th, but on April 20th. So whether or not she had to reapply, or whether she was applying, or whether she was in the process of seeking to return, all has to be judged as of that April 20 date, right? April 20th is the date that she was terminated. So the question we have to ask ourselves is, as of April 20th, would a reasonable employer have believed that she was trying to come back to her old job? Yes, Your Honor. Or another job with accommodations? Yes, because that's exactly what was stated during the hearing. And so whether she reapplied or didn't reapply afterwards, if she was wrongfully terminated on the 20th because of a lack of accommodations, negotiations, that would be the end of her cause of action, I mean, I would assume. Yes, that is the cause of action, and that is why summary judgment was granted, because as of April 20th, 2015, is the determinative date. There may have been other claims based upon this failure to provide another position, but what we are talking about is based upon the termination on April 20th of 2015. Do you think that this record would support that the employer could have had any reasonable doubt on April 20th that she wanted to come back to work, hopefully in that job or an accommodated job? There's no dispute about that at all, Your Honor. There is a written transcript. It's in the record. It's what Judge Moore looked at. But she was absolutely saying she wanted to come back to work. She had an appointment on May 22nd of 2015 to get an earlier return to work date. She suggested accommodations in addition to that of downgrade or some other types of transition training that she would need. So there's no doubt that the employer knew that she was intending to come back to work. She wanted to come back to work, and that is the beginning of the interactive process. Okay. And it's not its end. Thank you, Counsel. You're over time. Thank you. May it please the Court. Counsel Alan Epstein on behalf of Ms. Koppus and Weld County. The Cruces case that Your Honors were referring to is cited in the court's order at page 19. It's Cruces v. Utah State Veteran Nursing Home 222 Federal Appendix 776. To establish a prima facie case of disability discrimination under the ADA, the Rehabilitation Act and the Colorado Anti-Discrimination Act, plaintiff was required to establish she was a disabled person. As defined by the ADA, she was qualified with or without reasonable accommodation. Counsel, it would help me a lot if you'll move that microphone a little bit more because you're kind of moving in and out and I'm not catching everything you're saying. I want you to move it closer. He can't hear you. Sorry. Just raise the, yeah, there you go. Okay. Thank you. And that she suffered discrimination by Weld County because of her medical condition. Because plaintiff did not establish she could perform the essential functions of her job with or without reasonable accommodation, the district court properly entered summary judgment in Weld County's favor. Let me share with you what's bothering me in this case, Counsel, is that when you look at the dates, she was offered a position in the motor vehicle department, which they said she couldn't do. But at that same time, the very position that she held when she was discharged was open and vacant because the lady that was in there had already been permanently transferred. Now, why, if the county knows that and doesn't offer her, that's your argument, well, she didn't apply for it. Well, assuming she doesn't have to apply for it, why isn't that some type of discrimination when they offer her one job which she can't do but the very job that she was doing she can do? It's open. It's vacant. That's not mentioned too much in this record. My recollection of the record is that in April when the pre-termination meeting occurred, Ms. Wall was occupying or filling the position that plaintiff had and that Ms. Wall held that position after plaintiff was terminated because she indicated that she couldn't. She was clearly in an interim. Wasn't she always told? Wasn't it always known that she was holding that position as an interim assignment? Or was she permanently assigned to that position, Ms. Wall? I believe it was an interim position, but it was a position that needed to be filled in plaintiff's absence. Well, let me help you out there a minute because she was assigned as a temporary position, but then she did get assigned to that as I think for like only three weeks, and then she transferred out. And at the very same time that she's being offered a position that she can't do, the very position that she held was vacant and open and wasn't offered to her. Isn't that right? In June of 2015? In July. In July. Yes. I think that that is true, but at that point in time plaintiff had been terminated because in April she had indicated that she could not. Let me back you up to April. So in April you have a pre-termination hearing, your client does, and they say, look, we've got to fill this position, and it doesn't appear that you can do the job, so unless you can show us that you're going to be able to come back to work and do the job, we're going to have to terminate you, right? Yes. Okay. And she says, I don't think this is exactly how it was said, but she says something to this effect of, I want to come back, I'm trying to come back, and I need an accommodation of more time. Is that a fair characterization of what she said? Yes. Okay. At that point, what was your client's responsibility? Well, if Your Honor is asking, did Weld County have an obligation to extend a leave period indefinitely, under the case law they did not. Okay. What if she said, I need two weeks? I don't think they had the obligation to extend it for two weeks because at that point in time she had not been at her job for four months, and Ms. Kappas testified in her deposition that they needed that position filled because in April there was a lot of work to be done and the position couldn't be left vacant. Okay. So let me ask you another question. So assuming she would have said that day, I'm ready to come back, but I'm going to need an accommodation. You're going to have to help me with some things. Is there anything in the record showing that she could have done the job? No. There is no evidence in the record that she could have done the job, and Ms. Kappas testified in her deposition without contradiction that plaintiff could not have been accommodated without creating a new position for her and putting extra burden on her coworkers. That's the problem with not fulfilling your duty to have an interactive process because I think everybody agrees that she could not have done the job without accommodation. The question was there was never any dialogue about just exactly what kind of an accommodation would you have needed, and we just don't know that. She never claimed she could come back without any accommodation. Not at that time she didn't. But she didn't express any potential accommodations that would have worked. She said she needed to talk to her doctor to see what additional restrictions she would need. She said she was improving and progressing and that she wanted to come back, but the company never said, well, then how can we make this job work for you? They violated their own policy of not even giving her 10 days to try to get the doctor's certifications, and they just simply said, no, you're fired. And at that point the violation, if there was a violation, either occurred or didn't occur. That was the defining moment. From there on she was an outsider looking in rather than an insider trying not to get kicked out. Well, the policy I believe Your Honor is referring to is based on Ms. Coppice's testimony in her deposition, and plaintiff's arguments throughout some of her briefing is that Weld County had a policy of allowing employees 15 days to obtain a return to work clearance from a physician, and she was only given one day from the time she was asked to attend the meeting. But what Ms. Coppice testified to was that Weld County typically afforded employees 15 days after first going on leave to meet with a physician to fill out an ADA form to ask the physician what accommodations could be made to permit an employee to return to work, and none of the plaintiff's physicians filled out such a form, and they all opined that she was unable to work at all until at the earliest, August 1st of 2015. That testimony of Ms. Coppice is in Appellant's Appendix Volume 3, pages 568 to 570. And so these were facts known to the defendant before the plaintiff was terminated? The stuff about her not being able to come back until August 15th? August 1st. I'm sorry, I didn't hear the first part of Your Honor's question. Were those facts that you just recited to us, were those known by the defendant prior to the hearing, or did they learn them at the hearing? That it was going to be an extended time before she could come back? I believe so, yes. Okay. How do you respond to this statement in Smith, 10th Circuit published case? Summary judgment. My concern here is summary judgment. I mean, I don't know how she would work out on trial, but my concern is the summary judgment. And here's what Smith says about that. Summary judgment would be premature if there is a genuine dispute regarding whether the employer participated in good faith in attempting to secure a reassignment as part of its duty for a reasonable accommodation. Now, to me, what that says, unless you can convince me at least that the record shows that the employer made a good faith effort to accommodate her, that as long as she had requested accommodation, the summary judgment would have been inappropriate. How do you respond to that statement in Smith about this being disposed on summary judgment? I just want to stress again that some of your arguments, she had a very serious illness, and I'm not at all sure that she could show she could ever do that job with accommodation. But the process seems to have gotten aborted, first because she didn't have an interactive process, and secondly because she didn't have a trial. So twice this process aborted on her. I would argue that she did have an interactive process, that she was told she could come to this pre-termination meeting the next day and provide information. But one day's notice? I mean, have you tried to get a doctor's certificate of your ability on a one day's notice? I mean, that's just not even a realistic possibility. That's true, but she hadn't been at work for four months. She had no idea that she was going to be called to make that presentation that next day. She thought reasonably, I guess, that she had still time to let the process play out. I just want to stress that I do not know. I mean, I was very struck by the level of her disabilities, and I have no idea that she could prove her case. But it does seem to me that this interactive process that we in the Supreme Court say is so essential to an ADA, I just don't see how she got it on that one day's notice without the ability to get the doctor's certification she needed. But as the district court held, the May 22nd date that she requested until to see her neuro-ophthalmologist, I think it was, was not to get a certification. It was to find out what the status of her condition was. And, in fact, she wasn't given clearance on May 22nd. All Weld County knew was that her physicians uniformly, up until that point in time, said the earliest she would be able to return to work would be August 1st of 2015. So that's what they were led to understand based on the physicians' reports that they had. And until this meeting, had they ever said that that August 1st date was an unacceptable date? Until the meeting? They didn't say one way or another, right? So if they had all, you had said, just quoting what you said just now to us, until that meeting everybody assumed August, was it 31st, was going to be the date. And so if that was everybody's assumption, and then she had no chance to come up with new evidence once that assumption changed, is that consistent with their interactive obligations? I would argue that the meeting itself was an interactive process that Weld County afforded her to come forward with some information to establish when she could come back to work and when her condition was going to resolve. I mean, isn't that illusory, though? Well, I mean, come in for your interactive process tomorrow and be prepared to tell us the accommodations you're going to need to perform your job when you can't know that until you see your neurologist and you can't even see the neurologist for three weeks after. But there was no indication that the neurologist was going to say, you're going to be cleared for work. And based on what my plaintiff said at the meeting, she did not impart any information that would have allowed Weld County to reasonably accommodate her. Right, well, I mean, because she didn't have the information. I mean, your case could be different if, on May 20th, she'd have come back and said, I can't do it. He won't release me. Then you have a different case. Yes, and I don't know whether we can look in hindsight from May 22nd, but that's what would have happened. Right. Okay, thank you, Counsel. Thank you. All right, the case will be submitted. Thank you both for your arguments.